ENVIROTEST SYSTEMS CORPORATION *v.*
COMMISSIONER OF MOTOR VEHICLES
(SC 18156)

Norcott, Katz, Palmer, Zarella and McLachlan, Js.

---

Argued March 23—officially released September 8, 2009

*Gregory T. D'Auria*, associate attorney general, with whom were *Peter R. Huntsman*, assistant attorney general and, on the brief, *Richard Blumenthal*, attorney general, for the appellant (defendant).

*Dominic Fulco III*, with whom, on the brief, were *Justin M. Pawluk* and *Edward F. Spinella*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The sole issue in this appeal is whether General Statutes § 14-164c (e),[1] by force of necessary implication, waives the state's sovereign immunity from

---

[1] General Statutes § 14-164c (e) provides: "In order to provide for emissions inspection facilities, the commissioner may enter into a negotiated inspection agreement or agreements, notwithstanding chapters 50, 58, 59 and 60, with an independent contractor or contractors, to provide for the

suit. The defendant, the commissioner of motor vehicles (commissioner), appeals[2] from the trial court's denial of his motion to dismiss the action of the plaintiff, Envirotest Systems Corporation, claiming that the action is barred by the doctrine of sovereign immunity. We conclude that the language of the statute does not necessarily imply a waiver of sovereign immunity. Accordingly, we reverse the decision of the trial court.

leasing, construction, equipping, maintenance or operation of a system of official emissions inspection stations in such numbers and locations as may be required to provide vehicle owners reasonably convenient access to inspection facilities. The commissioner may employ such system and the services of such contractor or contractors to conduct safety inspections as provided by section 14-16a, subsection (g) of section 14-12 and section 14-103a. Such contractor or contractors, with the approval of the commissioner, may operate inspection stations at suitable locations owned or operated by other persons, firms or corporations, including retail business establishments with adequate facilities to accommodate and to perform inspections on motor vehicles. The commissioner is prohibited from entering into an inspection agreement with any independent contractor who: (1) Is engaged in the business of maintaining or repairing vehicles in this state, except that the independent contractor shall not be precluded from maintaining or repairing any vehicle owned or operated by the independent contractor; or (2) does not have the capability, resources or technical and management skill to adequately conduct, equip, operate and maintain a sufficient number of official emissions inspection stations. All persons employed by the independent contractor in the performance of an inspection agreement are deemed to be employees of the independent contractor and not of this state. The inspection agreement or agreements authorized by this section shall be subject to other provisions as follows: (A) Minimum requirements for staff, equipment, management and hours and place of operation of official emissions inspection stations including such additional testing facilities as may be established and operated in accordance with subsection (g) of this section; (B) reports and documentation concerning the operation of official emissions inspection stations and additional testing facilities as the commissioner may require; (C) surveillance privileges for the commissioner to ensure compliance with standards, procedures, rules, regulations and laws; and (D) any other provision deemed necessary by the commissioner for the administration of the inspection agreement. Nothing in the inspection agreement shall require the state to purchase any asset or assume any liability if such agreement is not renewed."

[2] The commissioner appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In reviewing a denial of a motion to dismiss, "we take the facts as expressly set forth, and necessarily implied, in the plaintiff's complaint, construing them in the light most favorable to the pleader." *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 253, 932 A.2d 1053 (2007). Because the plaintiff instituted this action by filing an application for an order to proceed with arbitration pursuant to General Statutes § 52-410,[3] we rely on the facts from the plaintiff's application.

In 1994, the plaintiff and the department of motor vehicles (department) entered into a contract for the establishment and operation of motor vehicle inspection facilities for the state. The contract requires the plaintiff to establish and operate a network of vehicle inspection facilities for conducting enhanced vehicle emission inspections of certain motor vehicles. Section 12 of the contract deals with dispute resolution and requires the parties to consult and work together to resolve any disputes arising under the contract. If the parties are unable to resolve a dispute through consultation, § 12 provides that the commissioner shall submit a written decision on the issue, which is final unless the plaintiff seeks review of the decision by the American Arbitration Association. Section 12 also provides that "[a]ll disputes and differences between the [plaintiff] and the [s]tate arising out of or under the [c]ontract and not so resolved through consultation, shall, at the option of either party, be settled and finally determined by arbitration in accordance with the applicable rules

---

[3] General Statutes § 52-410 provides in relevant part: "(a) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law. . . ."

of the American Arbitration Association." The last sentence of § 12 provides: "Except as provided in . . . [§] 14-164c et seq. pursuant to which this [c]ontract is executed, the [s]tate has not waived its right of sovereign immunity."

The present action arises from the plaintiff's claim that the commissioner breached the contract with the plaintiff by virtue of the department's failure to use its best efforts to enforce emissions testing compliance by creating and maintaining a registration suspension program, and that, as a consequence of that alleged failure, the plaintiff has suffered approximately $9 million in damages. After attempting to resolve the dispute through consultation with the commissioner, the plaintiff demanded that the commissioner issue a decision pursuant to § 12 of the contract. The commissioner responded by letter, indicating that it was the state's position that § 12 did not apply to the plaintiff's claims for monetary damages.

Pursuant to § 52-410, the plaintiff filed an application for an order to proceed with arbitration. The commissioner filed a motion to dismiss, asserting that the plaintiff's action was barred by the doctrine of sovereign immunity. The trial court denied the motion to dismiss, concluding that, by necessary implication, § 14-164c (e) vested the commissioner with authority to waive sovereign immunity. In so concluding, the court relied on the fact that § 14-164c (e) authorizes the commissioner to enter into "negotiated" agreements in a project of considerable magnitude. This appeal followed.

The issue of whether § 14-164c (e) waives the state's sovereign immunity presents a question of statutory construction over which we exercise plenary review. See, e.g., *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 7, 946 A.2d 1219 (2008). General Statutes § 1-2z "instructs us that [o]ur fundamental objective is

to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 651, 969 A.2d 750 (2009).

Keeping these principles of statutory construction in mind, we turn to the issue of whether the legislature, through § 14-164c (e), waived the state's sovereign immunity. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 80–81, 818 A.2d 758 (2003).

The doctrine of sovereign immunity is a rule of common law that operates as a strong presumption in favor

of the state's immunity from liability or suit. See *C. R. Klewin Northeast* v. *Fleming*, supra, 284 Conn. 258 ("The principle that the state cannot be sued without its consent . . . is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law." [Citation omitted; internal quotation marks omitted.]). "[T]his court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . [When] there is *any doubt* about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Emphasis added; internal quotation marks omitted.) Id., 259. In an action against the state in which damages are sought, "a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . ." (Citation omitted.) *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003). The parties concede, and we agree, that § 14-164c (e) does not expressly waive sovereign immunity. Therefore, the only issue is whether it does so by necessary implication.

In *Mahoney* v. *Lensink*, 213 Conn. 548, 569 A.2d 518 (1990),[4] we explained that, in order for statutory lan-

---

[4] To a large degree, we agree with Justice Katz' characterization in her concurrence of our decision in *Mahoney* v. *Lensink*, supra, 213 Conn. 548. Justice Katz declares that, in *Mahoney*, "the court concluded that a waiver was compelled by necessary implication," and further acknowledges that "the court concluded that the necessary implication *arose from the text* of related provisions . . . ." (Emphasis added.) Although it is true, as Justice Katz notes, that the court "examined the legislative history to confirm this construction," we conclude that this was either improper or merely irrelevant dictum. To the extent that the court *already* had concluded that the text of the statute at issue contained a waiver by necessary implication, the resort to legislative history was unnecessary to the ultimate decision in the case, thus representing dictum. Moreover, if *Mahoney* were decided today, after the passage of § 1-2z, it clearly would be improper to resort to legislative history for confirmation of a waiver of immunity derived by force of neces-

guage to give rise to a necessary implication that the state has waived its sovereign immunity, "[t]he probability . . . must be apparent, and not a mere matter of conjecture; but . . . necessarily such that from the words employed *an intention to the contrary cannot be supposed.*"[5] (Emphasis added; internal quotation marks omitted.) Id., 558 n.14. In other words, in order for a court to conclude that a statute waives sovereign immunity by force of necessary implication, it is not sufficient that the claimed waiver *reasonably* may be

sary implication from the face of the statute. Thus, we find the court's approach in *Mahoney* to be largely unhelpful in resolving the present case except insofar as that case demonstrates that the text of the statute is the exclusive source of a necessary implication.

[5] In her concurrence, Justice Katz criticizes our use of this definition of "necessary implication," deriding our reliance on "a quote in a footnote in *Mahoney* that we have not since repeated for the proposition that a necessary implication must arise solely and unambiguously from the text of the statute." This definition, however, is consistent with the normal usage of the phrase; for instance, Black's Law Dictionary defines "necessary implication" as "[a]n implication so strong in its probability that *anything to the contrary would be unreasonable.*" (Emphasis added.) Black's Law Dictionary (9th Ed. 2009). We fail to see how such a concrete, requisite implication could be derived from anything *but* the text of the statute, especially in light of the limited usefulness of legislative history and other extratextual sources in statutory construction. Such sources are generally used only to select between two or more *reasonable* interpretations of ambiguous statutory language. Indeed, one well known dictionary defines "ambiguous" in relevant part as "capable of being understood in two or more possible senses or ways . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003); cf. *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem,* 269 Conn. 120, 134 n.19, 848 A.2d 451 (2004) ("[t]he test to determine ambiguity is whether the statute . . . is susceptible to more than one reasonable interpretation"). In the event that such competing interpretations surface in our reading of a statute, it simply cannot be said that the legislature has waived sovereign immunity "by force of necessary implication," *regardless of* what the legislative history offers. The very act of searching the legislative history or other extratextual sources for clues as to the appropriate interpretation of a statute is a concession that more than one reasonable construction of the text is possible, and, in that case, any inference drawn cannot be *necessary.* In our view, the application of any lesser standard gives far too little weight to the presumption of sovereign immunity and would eviscerate our long-standing adherence to the strict requirements for a waiver of such immunity.

implied from the statutory language. It must, by logical necessity, be the *only possible interpretation* of the language. Therefore, although a conclusion that statutory language is ambiguous ordinarily allows a court, pursuant to § 1-2z, to consult extratextual sources in interpreting a statute, that avenue is unavailable when a court, in examining statutory language to determine whether a statute waives sovereign immunity by necessary implication, concludes that the language is ambiguous as to waiver. Ambiguous language, by definition, "is susceptible to more than one reasonable interpretation." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 134 n.19, 848 A.2d 451 (2004). In other words, in this context, the existence of uncertainty in a statute with regard to waiver is not an ambiguity but, rather, an answer. Thus, pursuant to § 1-2z, we cannot consult extratextual sources because we must interpret any uncertainty as to the existence of a waiver as preserving sovereign immunity.[6] As we have

---

[6] In her concurrence, Justice Katz claims that our approach "contradicts both the analytical framework established by . . . § 1-2z and our long-standing precedent regarding sovereign immunity . . . ." To the contrary, we believe the analysis outlined in this opinion is the *only* approach that is consistent with both § 1-2z and our precedent. As we discussed previously in this opinion, a necessary implication, by definition, *cannot* be susceptible to more than one reasonable inference. To the extent that the text of a statute is ambiguous with respect to waiver, therefore, it is *not* ambiguous in the § 1-2z sense. The force of our precedent makes clear that the statute's very ambiguity as to the existence of a waiver ends the interpretive inquiry in favor of preserving immunity; see, e.g., *White* v. *Burns*, 213 Conn. 307, 312, 567 A.2d 1195 (1990); and this result is fully in accord with the dictates of § 1-2z.

Nor, in our view, does Justice Katz point to any contradictory authority. In two of the cases that Justice Katz cites in her concurrence, namely, *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 9, and *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 292, 869 A.2d 1193 (2005), we were presented with statutes that *expressly* waived sovereign immunity. The only ambiguity in each case was the extent or scope of the waiver in a specific factual context, the resolution of which required resort to extratextual sources. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 9–14; *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, supra, 291–94. Justice Katz asserts that "the nature of our

explained, statutory language that waives the state's sovereign immunity by necessary implication must be susceptible to only one reasonable interpretation, namely, that the state waived its sovereign immunity. Thus, a conclusion that statutory language is ambiguous is inconsistent with the claim that the statute waives sovereign immunity by force of a necessary implication. Accordingly, unlike other contexts, in which the objective of our statutory construction is to determine whether the statutory language signifies by force of a necessary implication that the legislature intended to waive sovereign immunity, a conclusion that the statutory language is ambiguous with respect to the inference ends the inquiry, and consideration of extratextual sources is unwarranted.[7] See *Miller* v. *Egan*, supra, 265 Conn. 335–38 (*Zarella, J.*, concurring).[8]

inquiry" in these cases "was fundamentally the same" as when the issue is whether there is a waiver in the statute in the first place. We disagree. In neither of the foregoing cases was the waiver of sovereign immunity *itself* an issue. Rather, it was the scope of an *express* waiver that we found unclear, and, pursuant to § 1-2z, we turned to legislative history in an attempt to divine the meaning of relevant statutory terms in order to define the contours of the waiver. We find this task to be very different from the task of determining whether the legislature intended to waive sovereign immunity in the absence of an express waiver.

[7] We note that the issue of whether consideration of extratextual sources is necessary or appropriate when statutory language that plainly and unambiguously signifies that the legislature did not intend to waive sovereign immunity leads to absurd or unworkable results is not before us. Cf. *Rivers* v. *New Britain*, 288 Conn. 1, 9, 18–19, 950 A.2d 1247 (2008) (resorting to legislative history when statute, which did not waive sovereign immunity, failed to impose duty on state or municipality to remove snow and ice from sidewalk abutting state owned property, leading to unworkable result).

[8] In her concurrence, Justice Katz criticizes our adoption of the approach of the concurring opinion in *Miller* v. *Egan*, supra, 265 Conn. 301. The majority opinion in *Miller* is of limited precedential value in this context because it was released after this court discarded the plain meaning rule in *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003), but before the legislature responded to *Courchesne* by passing § 1-2z. The majority in *Miller* delved into the legislative history because of the rule established in *Courchesne* that, in matters of statutory interpretation, we *always* should look to legislative history. See *Miller* v. *Egan*, supra, 328. Subsequently, the legislature enacted § 1-2z and rejected, in toto, this method of interpretation.

The trial court in the present case determined that § 14-164c (e) implicitly waived sovereign immunity by granting to the commissioner the authority to negotiate inspection agreements. In arguing that the trial court properly so concluded, the plaintiff similarly relies on the grant to the commissioner of authority to negotiate the agreements.[9] The plaintiff also notes that the statute grants the commissioner authority to negotiate inspection agreements "notwithstanding chapters 50, 58, 59 and 60"; General Statutes § 14-164c (e); and the fact that the statute provides that any agreement shall be subject to "any other provision deemed necessary by the commissioner for the administration of the inspection agreement." General Statutes § 14-164c (e). The commissioner argues that the statutory language on

See General Statutes § 1-2z. In *Miller*, the majority correctly stated, in analyzing the text of the relevant statute: "We fail to see how a requirement that sheriffs and deputy sheriffs purchase personal liability insurance necessarily implies that the legislature intended to waive the state's sovereign immunity, either from suit or liability, under [General Statutes (Rev. to 1999)] § 6-30a. In fact, the opposite inference makes more sense, namely, that the legislature intended the individual sheriffs and deputy sheriffs, rather than the state, to bear liability for the conduct covered by the statute." *Miller* v. *Egan*, supra, 329–30. Nevertheless, the majority proceeded to address the legislative history of General Statutes (Rev. to 1999) § 6-30a even though it concluded that the text of the statute was at least ambiguous as to waiver and, at most, actually implied the opposite, namely, that no waiver was intended. Id., 329–31. This was driven entirely by the statutory construction principles set forth in *Courchesne*, which since have been rejected. Thus, *Miller* is an outlier and is inconsistent with a long line of decisions in this area.

[9] Although the parties treat this claim as one involving a legislative waiver of sovereign immunity, a more accurate characterization is that the plaintiff claims that the legislature delegated to the commissioner the power to waive sovereign immunity, which is an entirely different contention and one that implicates the separation of powers doctrine. Even if we did analyze the plaintiff's claim that the legislature accomplished such a delegation through § 14-164c (e), the plaintiff's claim still would fail because the language of § 14-164c (e) does not by force of necessary implication accomplish such a delegation of legislative authority. Moreover, even if we were to conclude that the statute did attempt to delegate the authority to waive sovereign immunity to the commissioner, we have grave doubts as to the constitutionality of such a delegation.

which the trial court and the plaintiff rely neither waives sovereign immunity nor grants to the commissioner the power to waive sovereign immunity. We agree with the commissioner.[10]

General Statutes § 14-164c (e) provides in relevant part: "In order to provide for emissions inspection facilities, the commissioner may enter into a negotiated inspection agreement or agreements, notwithstanding chapters 50, 58, 59 and 60, with an independent contractor or contractors, to provide for the leasing, construction, equipping, maintenance or operation of a system of official emissions inspection stations in such numbers and locations as may be required to provide vehicle owners reasonably convenient access to inspection facilities. . . . The inspection agreement or agreements authorized by this section shall be subject to other provisions as follows: (A) Minimum requirements for staff, equipment, management and hours and place of operation of official emissions inspection stations

[10] We note that the commissioner takes the view that § 14-164c (e) implicitly waives the state's immunity from liability by authorizing him to negotiate the inspection agreements. We assume without deciding that the commissioner correctly asserts that the statute does effect such an implicit waiver. That conclusion, however, would not avail the plaintiff because it would not necessarily imply that the legislature has waived its sovereign immunity from *suit*. As we explained in *Martinez* v. *Dept. of Public Safety*, supra, 263 Conn. 79, "[t]here is, of course, a distinction between sovereign immunity from suit and sovereign immunity from liability. Legislative waiver of a state's suit immunity merely establishes a remedy by which a claimant may enforce a valid claim against the state and subjects the state to the jurisdiction of the court[s]. By waiving its immunity from liability, however, the state concedes responsibility for wrongs attributable to it and accepts liability in favor of a claimant." (Internal quotation marks omitted.) A statute that explicitly waives immunity from suit implicitly waives immunity from liability; id.; but one that explicitly waives immunity from liability does not necessarily implicitly waive immunity from suit. See id., 80. Accordingly, even if we were to agree with the commissioner that § 14-164c (e) waives the state's immunity from liability, that conclusion would not prevent the present action from being dismissed due to lack of subject matter jurisdiction on the basis of the state's sovereign immunity from suit.

including such additional testing facilities as may be established and operated in accordance with subsection (g) of this section; (B) reports and documentation concerning the operation of official emissions inspection stations and additional testing facilities as the commissioner may require; (C) surveillance privileges for the commissioner to ensure compliance with standards, procedures, rules, regulations and laws; and (D) any other provision deemed necessary by the commissioner for the administration of the inspection agreement. . . ."

The plain language of the statute illustrates that the legislature's objectives in providing the commissioner with authority to negotiate and enter into inspection agreements pursuant to § 14-164c (e) were to identify the areas of negotiation, to establish the general scope and limitations of any agreement, to delineate the types of administrative provisions to which any agreement would be subject, and to vest the commissioner with discretion to fill in the details as necessary. None of the language in the statute alludes to liability, lawsuits or dispute resolution. A close examination of the statutory language reveals that the trial court's conclusion that § 14-164c (e) waives the state's sovereign immunity from suit by force of necessary implication is not supported. As we already have noted, the trial court relied primarily on the fact that § 14-164c (e) authorizes the commissioner to "enter into a *negotiated* inspection agreement or agreements . . . with an independent contractor or contractors . . . ." (Emphasis added; internal quotation marks omitted.) The plaintiff contends that the fact that this grant of negotiation authority confers exceptionally broad authority on the commissioner suggests that it includes by necessary implication the authority to incorporate into the agreement a dispute resolution procedure that effectively waives the state's sovereign immunity. The term "negotiate," how-

ever, must be read in the context of the entire sentence, which authorizes the commissioner to negotiate the inspection agreement "to provide for the leasing, construction, equipping, maintenance or operation of a system of official emissions inspection stations in such numbers and locations as may be required to provide vehicle owners reasonably convenient access to inspection facilities." General Statutes § 14-164c (e). In other words, the statute authorizes the commissioner to negotiate the details regarding the establishment, operation and maintenance of inspection stations. It simply does not follow, from a grant of authority to the commissioner to negotiate the terms of an agreement, however large the project covered by the agreement may be, that the grant includes by necessary implication the power to waive the state's sovereign immunity. Otherwise, every provision of the General Statutes that grants to an administrative agency the power to negotiate a contract would have to be construed as a delegation of the legislature's power to waive sovereign immunity despite the absence of an express delegation in the statute, or language from which an intent to delegate necessarily could be implied. See, e.g., General Statutes § 3-127 (authorizing attorney general "to negotiate and contract" with other states regarding "use, allocation or diversion" of interstate watercourses); General Statutes § 4b-55a (authorizing commissioner of public works to "negotiate . . . contract[s]" for environmental evaluations for priority higher education facility projects); General Statutes § 17a-27d (authorizing commissioner of public works to "negotiate . . . contract" for architectural services and design for state juvenile training school project). Put simply, the plaintiff attempts to draw an inference, on the basis of the "broad[ness]" of the negotiating powers granted to the commissioner, that those powers necessarily must include the power to waive sovereign immunity. That type of inference

simply is inconsistent with our definition of "necessary implication," which occurs when a particular meaning of the statutory language is the only reasonable interpretation of that language and is one that flows by logical necessity from the words of the statute. Cf. *Mahoney* v. *Lensink*, supra, 213 Conn. 558 n.14.

The plaintiff also relies on the fact that the statute vests the commissioner with authority to negotiate such agreements "notwithstanding chapters 50, 58, 59 and 60 . . . ." General Statutes § 14-164c (e). These chapters of the General Statutes deal with state planning, appropriations, budget issues, purchasing, real property management, capital improvements, and the construction and maintenance of state buildings. Consequently, these chapters set forth procedures for the awarding of contracts with the state. See generally General Statutes §§ 4-65a et seq., 4a-50 et seq., 4b-1 et seq. and 4b-51 et seq. According to the plaintiff, the fact that the commissioner's authority under § 14-164c (e) exists, "notwithstanding" these chapters, evidences an unusually broad legislative grant of authority to the commissioner. The plaintiff does not explain why the grant of authority to the commissioner in § 14-164c (e) "notwithstanding" these chapters necessitates the specific conclusion that the commissioner was granted authority to waive sovereign immunity. Certainly, a more reasonable interpretation of § 14-164c (e) would be that it granted the commissioner the authority to negotiate inspection agreements without the requirement of complying with the competitive bidding process. See, e.g., General Statutes § 4a-57 (competitive bidding and negotiation for purchases and contracts); General Statutes § 4a-59 (bidding procedures in awarding of contracts); General Statutes § 4a-82 (bidding procedures in awarding of janitorial contracts). The conclusion that the plaintiff proposes is hardly a necessary one, particularly because one chapter of the General Statutes that is *not* enumer-

ated is chapter 53, which deals with claims against the state and creates the office of the claims commissioner. See General Statutes § 4-141 et seq. Once again, the plaintiff asks us to draw a very broad inference, namely, that, because the grant of authority to the commissioner in § 14-164c (e) includes broad powers to negotiate a contract, those powers necessarily include the discretion to waive the state's sovereign immunity. That conclusion, however, is not necessarily implied from the language of the statute.

Lastly, the plaintiff refers to the language in § 14-164c (e) that alludes to the various provisions to which the inspection agreement or agreements shall be subject, including provisions regarding staffing, equipment, hours and place of operation, reporting and documentation requirements, surveillance privileges for the commissioner to ensure compliance with standards and regulations, and "any other provision deemed necessary by the commissioner for the administration of the inspection agreement." General Statutes § 14-164c (e). This catchall provision, the plaintiff claims, vests the commissioner with authority to waive sovereign immunity when such a waiver is "necessary . . . for the administration of the inspection agreement." General Statutes § 14-164c (e). This language, however, must be understood in the context of the preceding text, which enumerates provisions that have to do with the operation of inspection stations, management of staff and regulation of quality control. Thus, "administration of the inspection agreement" reasonably may be interpreted to mean the application of the agreement to the day-to-day issues that are likely to arise in the operation of inspection stations. Likewise, the "other provision[s]" that the commissioner deems necessary to the administration of the inspection agreement would be similar in scope. There is no suggestion that such "other provision[s]" reasonably would include provisions con-

cerning liability or dispute resolution. Accordingly, the catchall provision does not necessarily imply that the legislature waived sovereign immunity from suit, and the plain language of the statute does not support the plaintiff's claim.[11]

Moreover, in considering whether the legislature intended to waive the state's sovereign immunity, we note that the legislature, in enacting § 14-164c (e), "is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of law. . . . The General Assembly is always presumed to know all the existing statutes and the effect that its action or [lack thereof] will have [on] any one of them. And it is always presumed to have intended that effect which its action or [lack thereof] produces." (Citations omitted; internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, supra, 263 Conn. 84.

"The legislature thus presumably enacted [§ 14-164c (e)] with knowledge of our statutes requiring any person with a claim against the state to file such claim with the state claims commissioner, seeking either payment or permission to sue the state. See [generally] General Statutes § 4-141 et seq. The claims commissioner has discretionary authority to pay or reject claims, to make recommendations to the legislature with regard to claims, and to authorize suit against the state. Specifically, the claims commissioner can approve the pay-

[11] Because we conclude that the plaintiff's claim is not supported by the plain language of § 14-164c (e), we need not consider the plaintiff's arguments to the extent that they rely on extratextual sources in support of the meaning of the statute's text. For that reason, the contractual language on which the plaintiff relies is irrelevant to our analysis. Specifically, the plaintiff relies on the language in § 12 of the contract, which provides in relevant part: "Except as provided in . . . [§] 14-164c et seq. pursuant to which this [c]ontract is executed, the [s]tate has not waived its right of sovereign immunity." Because we have concluded that there is no waiver of sovereign immunity in § 14-164c (e), this provision signifies that the state has not waived sovereign immunity through the contract.

ment of any claim for less than $7500 in damages. General Statutes § 4-158 (a). If the claim exceeds $7500, the claims commissioner must make a recommendation to the General Assembly suggesting payment or rejection, and the General Assembly may accept, reject or alter the claims commissioner's recommendation. General Statutes § 4-159. The claims commissioner also may authorize suit against the state in Superior Court. General Statutes § 4-160 (a). We must infer that the legislature enacted [§ 14-164c (e)] knowing of these detailed statutory provisions that require claimants with indemnity claims against the state to enforce those claims through the claims commissioner." *Martinez* v. *Dept. of Public Safety*, supra, 263 Conn. 84–85.

The decision to deny the motion to dismiss is reversed and the case is remanded with direction to grant the motion to dismiss and to render judgment thereon for the commissioner.

In this opinion NORCOTT and McLACHLAN, Js., concurred.

KATZ, J., concurring. The issue in the present case is whether General Statutes § 14-164c (e)[1] waives the state's sovereign immunity for purposes of an action brought by the plaintiff, Envirotest Systems Corporation, a provider of vehicle emission inspection facilities for the state, against the defendant, the commissioner of motor vehicles, for an alleged breach of a contract executed pursuant to the defendant's authority under that statute. Although I agree with the majority's ultimate conclusion that § 14-164c (e) does not waive the state's sovereign immunity either expressly or by force of necessary implication, I write separately to express two concerns. First, the majority adopts an approach that contradicts both the analytical framework estab-

---

[1] See footnote 1 of the majority opinion for the text of § 14-164c (e).

lished by General Statutes § 1-2z and our long-standing precedent regarding sovereign immunity by concluding that, if there is an ambiguity in the statute as to whether there has been a waiver of sovereign immunity, the court cannot consult extratextual sources to ascertain whether the legislature intended to waive immunity by necessary implication. Second, the majority's approach essentially eviscerates the possibility of a waiver of sovereign immunity on the basis of a necessary implication. I would apply our established analytical framework to reach the conclusion that the legislature neither expressly nor impliedly waives sovereign immunity regarding emissions inspection contracts under § 14-164c (e).

I begin with my disagreement with the majority's approach as it applies to the question of ambiguity. I first note that § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." The legislature has provided no exception in § 1-2z for statutes implicating questions of a waiver of sovereign immunity. Therefore, we must presume that the legislature intended for such statutes to be construed under the same rules of construction applicable to every other statute, wherein an ambiguity in the text permits resort to extratextual sources. Indeed, we have applied § 1-2z, or an analytical framework consistent with § 1-2z, to other statutes requiring a strict construction, like statutes implicating waivers of sovereign immunity.[2]

---

[2] See, e.g., *State* v. *Cote*, 286 Conn. 603, 614–15, 945 A.2d 412 (2008) (citing § 1-2z in connection with "strict construction" of penal statutes); *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 57, 881 A.2d 194 (2005) (citing § 1-2z in connection with "strict construction" of statutes in derogation of common law); see also *St. Joseph's Living Center, Inc.* v. *Windham*,

By precluding recourse to a traditional and accepted tool of statutory analysis that even predates § 1-2z, the majority deviates from the framework we have set forth in our prior treatment of claims of waiver of sovereign immunity. See *Lyon* v. *Jones*, 291 Conn. 384, 395–96, 968 A.2d 416 (2009); *Rivers* v. *New Britain*, 288 Conn. 1, 10, 950 A.2d 1247 (2008); *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 8–10, 946 A.2d 1219 (2008); *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711–12, 937 A.2d 675 (2007); *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 258–59, 932 A.2d 1053 (2007); *184 Windsor Avenue, LLC* v. *State*, 274 Conn. 302, 311–12, 875 A.2d 498 (2005); *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 291, 869 A.2d 1193 (2005); *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 81–82, 818 A.2d 758 (2003). The mere fact that resort to legislative history rarely has been necessary to determine the immunity question does not undermine the plethora of case law acknowledging its availability as a tool of construction when needed.

For example, prior to the adoption of § 1-2z, in *Mahoney* v. *Lensink*, 213 Conn. 548, 555, 569 A.2d 518 (1990), the issue was "whether [General Statutes] § 17-206k, in providing a statutory remedy for those persons aggrieved by violations of any specific provisions of the patients' bill of rights . . . constitutes an abrogation of sovereign immunity so as to authorize a voluntary patient in a state mental facility to sue the state or

290 Conn. 695, 707, 718–19 n.30, 966 A.2d 188 (2009) (citing strict construction rule applied to statutes implicating tax exemption and relying in part on legislative history); *Kelo* v. *New London*, 268 Conn. 1, 24–25, 843 A.2d 500 (2004) (considering legislative history when strict construction given to eminent domain statutes), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005); *Mack* v. *Saars*, 150 Conn. 290, 294–95, 188 A.2d 863 (1963) (noting that text and legislative history examined when strict construction given to statute that was both in derogation of common-law right and penal in nature).

its commissioners." Acknowledging that this question
required a strict construction of the statute, the court
concluded that a waiver was compelled by necessary
implication. Id., 555–56. Although the court concluded
that the necessary implication arose from the text of
related provisions, which included references to " 'any
public . . . facility' "; id., 558; the court extensively
examined the legislative history to confirm this con-
struction. Id., 559–62. Indeed, the fact that the lion's
share of the court's analysis focused on this history
indicates that it was integral to the court's conclusion
and not mere dicta.

As further examples of this approach after the enact-
ment of § 1-2z and consistent with the limitations
therein, in both *Dept. of Transportation* v. *White Oak
Corp.*, supra, 287 Conn. 11–16, and *First Union
National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*,
supra, 273 Conn. 292–94, we examined extratextual
sources in order to determine whether the legislature
had waived sovereign immunity by necessary implica-
tion regarding certain specific claims. In both cases,
the court first determined that the statute at issue was
ambiguous and then examined the legislative history
to reach its conclusion that there was insufficient sup-
port for the plaintiff's contention that the legislature
had waived sovereign immunity by necessary implica-
tion with respect to the claims raised. *Dept. of Trans-
portation* v. *White Oak Corp.*, supra, 10–11, 14; *First
Union National Bank* v. *Hi Ho Mall Shopping Ven-
tures, Inc.*, supra, 291–92, 294. Although those two cases
concerned statutes that granted clear waivers of sover-
eign immunity of unclear scope, the nature of our
inquiry was fundamentally the same as if it were
whether the statute granted any waiver. In either cir-
cumstance, we employ the same rules of strict construc-
tion to determine whether the statutory terms, applied
to the particulars of the claim at issue, effectuate a

waiver of sovereign immunity.[3] Compare *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, supra, 293 (citing rule of strict construction to determine scope of waiver), with *Rivers* v. *New Britain*, supra, 288 Conn. 11 (noting general rule of strict construction given to statute to determine waiver of sovereign immunity).

My second, related concern with the majority's approach in this case is that it eviscerates our established jurisprudence regarding sovereign immunity by, in essence, precluding any finding of waiver by necessary implication. For more than a century, we have held that sovereign immunity may be waived by either "clear intention to that effect . . . disclosed by the use of express terms *or by force of a necessary implication.*" (Emphasis added; internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 9; accord *Lyon* v. *Jones*, supra, 291 Conn. 397; *C. R. Klewin Northeast, LLC* v. *Fleming*, supra, 284 Conn. 258; *Struckman* v. *Burns*, 205 Conn. 542, 558, 534 A.2d 888 (1987); *Murphy* v. *Ives*, 151 Conn. 259, 262–63, 196 A.2d 596 (1963); *State* v. *Kilburn*, 81 Conn. 9, 11, 69 A. 1028 (1908); *State* v. *Hartford*, 50 Conn. 89, 90–91 (1882). This precedent establishes that the state can waive sovereign immunity by a necessary implication that need not derive from express waiver language in the text. The majority, however, essentially conflates

---

[3] I further would note that a distinction between an inquiry into whether a statute *grants* waiver in a particular case and an inquiry into whether a particular claim falls within the *scope* of a granted waiver is unsound because our analysis of sovereign immunity waiver always has sought to determine whether statutory terms relevant to a claim, applied to the particulars of that claim. See, e.g., *Rivers* v. *New Britain*, supra, 288 Conn. 9–10 ("[although General Statutes] § 7-163a was intended to authorize the promulgation of municipal ordinances that shift the responsibility for the removal of ice and snow on public sidewalks to abutting private landowners, we conclude that § 7-163a does not relieve the municipality of its duty of care or liability with respect to the accumulation of snow and ice on a public sidewalk when the state is the abutting landowner").

the two ways in which to waive immunity, relying on a quote in a footnote in *Mahoney* that we have not since repeated for the proposition that a necessary implication must arise solely and unambiguously from the text of the statute. See *Mahoney* v. *Lensink*, supra, 213 Conn. 558 n.14 ("We have construed 'necessary implication' *in the context of the construction of a testator's intent in a* will to mean '[t]he probability . . . must be apparent, and not a mere matter of conjecture; but . . . necessarily such that from the words employed an intention to the contrary cannot be supposed.' *Weed* v. *Scofield*, 73 Conn. 670, 678, 49 A. 22 (1901)." [Emphasis added.]). It is ironic that, in *Mahoney*, we relied in part on legislative history to determine that a waiver by necessary implication did arise.

Despite our established framework, the majority in the present case adopts the view set out in the concurring opinion in *Miller* v. *Egan*, 265 Conn. 301, 336–37, 828 A.2d 549 (2003) (*Zarella, J.,* concurring). In that concurring opinion, Justice Zarella posited: "When a statute does not contain any language giving rise to a necessary implication of waiver . . . consideration of extratextual sources either will be a fool's errand leading to material supportive of nonwaiver, or will lead to some evidence of waiver notwithstanding the lack of textual support. . . . If the waiver is neither expressly contained in the statute nor a necessary implication derived from the text of the statute, then there is no waiver, regardless of the existence of anything to the contrary in extratextual sources." (Citations omitted.) Id., 336–38. The majority in the present case now adopts the approach utilized by the concurrence in *Miller* by concluding that any ambiguity, by definition, eliminates the possibility of waiver by necessary implication and precludes resort to extratextual sources. Because this approach contravenes the framework that has been set forth in our case law and that is stated as a matter of

legislative intent in § 1-2z, I disagree with the majority's approach.

I would resolve the present case under our established framework for the analysis of claims regarding waiver of sovereign immunity and for the construction of statutes. Here, as the majority points out, "[n]one of the language of [§ 14-164c (e)] alludes to liability, lawsuits or dispute resolution." To the extent that the plaintiff claims that the fact that the statute allows a state agent to enter into a contract gives rise to a waiver of sovereign immunity by necessary implication, such a claim previously was rejected by this court in *184 Windsor Avenue, LLC* v. *State*, supra, 274 Conn. 302. In that case, we reasoned that, if the mere fact that the state enters into a contract with another party were enough to give rise to a waiver of sovereign immunity, there would have been no reason for the state expressly to have waived its immunity by statute as to some state contracts; id., 311; and not others. See id., 312–13 ("Accordingly, we cannot construe [General Statutes] § 4-61 beyond its express public works exceptions [for waivers of sovereign immunity] because to do so would render them superfluous, as well as violate the maxim that the legislature's inclusion solely of public works contracts necessarily implies the exclusion of other contracts, including the plaintiff's lease with the state. . . . Thus, in the absence of a statutory waiver of sovereign immunity, the plaintiff may not bring suit against the state for claims arising out of the lease without authorization from the claims commissioner to do so." [Citation omitted.]); see also *Barde* v. *Board of Trustees*, 207 Conn. 59, 66, 539 A.2d 1000 (1988) (explaining that even constitutional claim relating to state contract cannot "supersede the state's sovereign immunity . . . when the alternative procedure available through the claims commissioner, which might have provided the relief sought, has been ignored"). The legislature dem-

onstrated its concurrence with this strict approach to waiver of immunity in the context of contract claims when it revisited § 14-164c subsequent to our decision in *184 Windsor Avenue, LLC*; see Public Acts 2007, No. 07-167, § 35; but did not add any language to indicate that it intended to waive sovereign immunity for the contracts therein. See *State* v. *Salamon*, 287 Conn. 509, 525, 949 A.2d 1092 (2008) ("[l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute" [internal quotation marks omitted]). Therefore, I agree with the majority's conclusion, but disagree with its reasoning.

Accordingly, I respectfully concur.

PALMER, J., concurring. I agree with the result that the majority reaches. For the reasons set forth by Justice Katz in her concurring opinion, however, I do not agree with the majority's conclusion that it is improper for this court to resort to legislative history in determining whether a statute waives sovereign immunity by force of necessary implication. I see no persuasive reason why we should foreclose ourselves from consulting legislative history when it may be useful to do so because the statutory language is not crystal clear with respect to the intent of the legislature. I therefore respectfully concur.