******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ROBINSON, C. J., concurring in the judgment. I agree with the majority's decision to affirm the judgment of the trial court, which rendered summary judgment in this tax appeal in favor of the plaintiffs, Rainbow Housing Corporation (Rainbow Housing) and Gilead Community Services, Inc. (Gilead), on the ground that they provide temporary housing within the meaning of General Statutes § 12-81 (7) (B).[1] I agree with the majority's ultimate conclusion that Valor Home, which is a residence for adults with mental illness that Rainbow Housing owns and leases to Gilead to operate, provides temporary housing. I write separately, however, because I respectfully disagree with the majority's analysis insofar as it concludes that § 12-81 (7) (B) is ambiguous under our well established principles of statutory construction.[2] I conclude that the statutory language of § 12-81 (7) (B), and particularly the definition of "temporary," is clear and unambiguous, with whether a facility meets that definition being a highly fact sensitive question for the trier. Because the facts in this tax appeal were stipulated, meaning that the defendant, the town of Cromwell, did not establish the existence of a genuine issue of material fact as to the temporary nature of the housing provided by Valor Home, I join with the majority in affirming the judgment of the trial court.

As noted by the majority, whether Valor Home's housing is "temporary" within the meaning of § 12-81 (7) (B) presents an issue of statutory construction, which is a question of law over which we exercise plenary review. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 141, 210 A.3d 1 (2019). It is well settled that we follow the plain meaning rule pursuant to General Statutes § 1-2z in construing statutes "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45, 213 A.3d 1110 (2019); see id., 45–46 (stating plain meaning rule).

We begin with the text of the statute. Section 12-81 (7) (A) provides that, with certain exceptions, property used for "charitable purposes" is exempt from taxation. However, § 12-81 (7) (B) provides in relevant part that "housing subsidized, in whole or in part, by federal, state or local government . . . shall not constitute a charitable purpose under this section. . . ." The statute then provides that the term "housing" does "not include real property used for *temporary housing* belonging to, or held in trust for, any corporation organized exclusively for charitable purposes and exempt from taxation for federal income tax purposes, the primary use of which property is one or more of the following . . . (iii) housing for persons who are homeless, persons with a mental health disorder, persons with intellectual

or physical disability or victims of domestic violence . . . and (v) short-term housing operated by a charitable organization where the average length of stay is less than six months. The operation of such housing, including the receipt of any rental payments, by such charitable organization shall be deemed to be an exclusively charitable purpose . . . .” (Emphasis added.) General Statutes § 12-81 (7) (B). Because it is undisputed that Valor Home provides treatment and services for “persons with a mental health disorder,” and we assume, without deciding, that Valor Home is subsidized in part by the Department of Mental Health and Addiction Services, the sole question before us is whether Valor Home provides “temporary” housing so as to qualify for a property tax exemption under § 12-81 (7) (B).

Under § 1-2z, we first must determine whether § 12-81 (7) (B) is ambiguous. “The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation.” (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014). In other words, a statute is considered plain and unambiguous when “the meaning . . . is so strongly indicated or suggested by the [statutory] language . . . that . . . it appears to be *the* meaning and appears to preclude any other likely meaning.” (Emphasis in original; internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 698 n.6, 258 A.3d 1268 (2021). In interpreting statutes, words and phrases are construed according to their “commonly approved usage . . . .” General Statutes § 1-1 (a); see e.g., *State* v. *Panek*, 328 Conn. 219, 227–29, 177 A.3d 1113 (2018). As discussed by the majority, “ ‘temporary’ means ‘lasting for a time only: existing or continuing for a limited time: impermanent, transitory . . . .’ Webster’s Third New International Dictionary (2002) p. 2353; see also Oxford American Dictionary and Language Guide (1999) p. 1038 (defining ‘temporary’ as ‘lasting or meant to last only for a limited time’).” Part II of the majority opinion. Neither the parties nor the majority presents an alternative interpretation for the meaning of “temporary” other than its plain meaning. Instead, the majority concludes that, because the statute provides a durational limitation for short-term housing and is silent regarding a durational limitation for temporary housing, the statute is ambiguous. I respectfully disagree with the majority’s conclusion as to the statute’s ambiguity.

First, the majority points out that § 12-81 (7) (B), in enumerating the exceptions to the general exclusion of subsidized housing from tax exempt status, provides a time limit only for “short-term housing,” which, as defined in the statute, means an average stay of less than six months in duration. See General Statutes § 12-81 (7) (B) (v). The majority suggests that such an inclu-

sion indicates that the legislature intended the phrases "short-term" and "temporary" to have different meanings. I agree that the meaning of "short-term" is distinct from the previously discussed meaning of "temporary" based on the plain wording of the statute. An inclusion of a time limit for "short-term" housing but not for "temporary" housing, however, does not render the word "temporary" ambiguous. Indeed, it demonstrates that, had the legislature intended to provide a durational limitation for "temporary" housing, rather than just "short-term" housing, it could have done so. See, e.g., *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 194, 128 A.3d 901 (2016) (common principle of statutory construction is that, when legislature expresses list of items, exclusion of item is deliberate); *Stafford* v. *Roadway*, 312 Conn. 184, 194, 93 A.3d 1058 (2014) ("[i]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)). It is clear from the plain text of the statute that "temporary" housing encompasses residential mental health programs, drug rehabilitation programs, and orphanages, in contrast to "short-term" housing, which is specifically limited in duration, and addresses a broad, catchall category of temporary housing.

Second, I disagree with the majority's conclusion that the statute's silence as to a durational time limit for "temporary" housing is evidence of its ambiguity. This court has "made clear that [t]he fact that . . . relevant statutory provisions are silent . . . does not mean that they are ambiguous." (Internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 653–54, 969 A.2d 750 (2009); see, e.g., id., 654 (statute's silence about whether it permits in-court testimony by social worker "should not be skewed as to indicate ambiguity" because it is not susceptible to more than one plausible interpretation); *Manifold* v. *Ragaglia*, 272 Conn. 410, 419, 862 A.2d 292 (2004) ("[statutory] silence does not . . . necessarily equate to ambiguity"). I recognize that, in limited circumstances, this court has found a statute ambiguous as a result of its silence. However, this case does not present such a circumstance. "[S]ilence may render a statute ambiguous when the missing subject reasonably is necessary to effectuate the provision as written." *State* v. *Ramos*, 306 Conn. 125, 136, 49 A.3d 197 (2012); see also *Stuart* v. *Stuart*, 297 Conn. 26, 37, 996 A.2d 259 (2010) (silence as to standard of proof rendered statute ambiguous because there was "more than one plausible interpretation of its meaning"). In contrast, § 12-81 (7) (B) is not silent as to its subject and therefore does not fall within this first instance of ambiguity created by silence.

I also acknowledge that "the legislature's silence as to the scope of a term may render the statute ambiguous. See *Thomas* v. *Dept. of Developmental Services*,

297 Conn. 391, 400, 999 A.2d 682 (2010) ([W]e note that the lien provision is silent with respect to its scope. Although [statutory] silence does not . . . necessarily equate to ambiguity . . . we conclude that this silence renders the provision ambiguous with respect to its scope because there is more than one plausible interpretation of its meaning. . . .)." (Internal quotation marks omitted.) *State* v. *Ramos*, supra, 306 Conn. 137. In *Thomas*, the statute was silent as to an employer's rights under the lien provision for future workers' compensation claims. See *Thomas* v. *Dept. of Developmental Services*, supra, 396. No such ambiguity exists here. Instead, the silence of § 12-81 (7) (B) as to a specific duration for temporary housing does not render the text of the statute susceptible to more than one plausible reading. See *State* v. *Ramos*, supra, 138–39 (statutory silence as to effect of untimely filed motion did not render statute ambiguous). Rather, the statutory silence simply requires this court to apply the plain and unambiguous meaning of the word "temporary" to the facts of this case in order to determine whether Valor Home provides temporary housing to its residents.

Because the language of § 12-81 (7) (B) is clear and unambiguous, the only remaining question is whether, as a factual matter, Valor Home's residential program provides temporary housing within the common usage of the term.[3] Under the plain meaning of the statute, whether a charitable program provides temporary housing leads to a fact intensive inquiry. I note that the record in this case consists of stipulated facts, under which there is no genuine issue of material fact. Valor Home provides housing for up to five men at a time, each of whom pays a monthly rental fee. Valor Home provides its residents with a myriad of services, including psychiatric clinical services, skill building instruction, and rehabilitative activities. Gilead's chief executive officer, Dan Osborne, states in his affidavit that "[o]ccupancy at [Valor Home] is temporary and transitional insofar as the individuals who live at [Valor Home] . . . live there [only] until they no longer need the services provided by Gilead. There is no specific term by which an individual must leave [Valor Home]; the term is entirely dependent [on] the individual's treatment progress. Once the individuals are capable of living more independently through the services and supports [provided] by Gilead, they move out of [Valor Home]." I agree with the majority's observation that "[t]he defendant failed to produce any evidence to contradict or rebut the plaintiffs' evidence demonstrating that the housing provided by Valor Home is temporary." Part II of the majority opinion.

I emphasize that a more developed factual record might well have led to a different conclusion in this case. For example, the record does not contain any evidence regarding how long residents generally stay at Valor Home. It also does not contain any evidence

concerning whether Valor Home's residents act in a manner consistent with living somewhere on a more than temporary basis, such as using its address to register to vote.[4] Cf. *Hicks* v. *Brophy*, 839 F. Supp. 948, 951 (D. Conn. 1993) ("[F]actors [to determine domicil] include the place where civil and political rights are exercised, taxes paid, real and personal property (such as automobiles) located, driver's and other licenses obtained, bank accounts maintained, and places of business or employment. . . . Other factors are also relevant, such as whether the person owns or rents his place of residence, how permanent the residence appears, and the location of a person's physician, lawyer, accountant, dentist, stockbroker . . . ." (Citations omitted.)); *Litvaitis* v. *Litvaitis*, 162 Conn. 540, 546, 295 A.2d 519 (1972) ("[t]o constitute domicil, the residence at the place chosen for the domicil must be actual, and to the fact of residence there must be added the intention of remaining permanently; and that place is the domicil of the person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with the present intention of making it his home" (internal quotation marks omitted)).

Based on the limited factual record in this case, I conclude that Valor Home provides temporary housing to its clients within the meaning of the plain language of § 12-81 (7) (B). I, therefore, agree with the majority's conclusion that the trial court properly rendered summary judgment in favor of the plaintiffs.

Accordingly, I concur in the judgment of the court affirming the trial court's judgment.

[1] General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation . . . (7) (B) On and after July 1, 1967, housing subsidized, in whole or in part, by federal, state or local government and housing for persons or families of low and moderate income shall not constitute a charitable purpose under this section. As used in this subdivision, 'housing' shall not include real property used for temporary housing belonging to, or held in trust for, any corporation organized exclusively for charitable purposes and exempt from taxation for federal income tax purposes, the primary use of which property is one or more of the following: (i) An orphanage; (ii) a drug or alcohol treatment or rehabilitation facility; (iii) housing for persons who are homeless, persons with a mental health disorder, persons with intellectual or physical disability or victims of domestic violence; (iv) housing for ex-offenders or for individuals participating in a program sponsored by the state Department of Correction or Judicial Branch; and (v) short-term housing operated by a charitable organization where the average length of stay is less than six months. The operation of such housing, including the receipt of any rental payments, by such charitable organization shall be deemed to be an exclusively charitable purpose . . . ."

[2] I also note my agreement with part I of the majority opinion, in which the majority concludes that, because the parties stipulated that the plaintiffs' M-3 application was "complete," the defendant cannot now challenge that fact for the first time on appeal.

[3] I note that, prior to the enactment of § 1-2z, this court addressed latent ambiguity arising from the application of an otherwise unambiguous statute by referencing the legislative history of the statutory provision. "When application of the statute to a particular situation reveals a latent ambiguity in seemingly unambiguous language . . . we turn for guidance to the purpose of the statute and its legislative history . . . ." *University of Connecticut* v. *Freedom of Information Commission*, 217 Conn. 322, 328, 585 A.2d 690 (1991); see also *State* v. *Courchesne*, 262 Conn. 537, 564–65, 572, 816 A.2d

562 (2003); *Conway* v. *Wilton*, 238 Conn. 653, 665, 680 A.2d 242 (1996).

However, after the passage of § 1-2z, this court has recognized that such an approach is no longer appropriate. "Prior to the enactment of § 1-2z, this court sometimes turned to the legislative history of a statutory provision that, although clear on its face, contained a latent ambiguity when the statute was applied to the facts of the case . . . ." *State* v. *Ramos*, supra, 306 Conn. 144 n.4 (*Palmer, J.*, concurring); see also *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 391 n.8, 978 A.2d 49 (2009) ("the legislature responded to *Courchesne* by passing § 1-2z . . . and rejected, in toto, this [court's] method of interpretation" (citation omitted)); *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 392 n.8 ("the statutory construction principles set forth in *Courchesne* . . . have been rejected").

As Justice Palmer reiterated in his concurrence in *Ramos*, "we are directed by § 1-2z not to consider extratextual sources in determining the outcome of the present case because [the statute] is not ambiguous on its face with respect to the issue presently before the court." *State* v. *Ramos*, supra, 306 Conn. 148 (*Palmer, J.*, concurring). I agree with Justice Palmer that § 1-2z has the potential to limit this court's ability to ascertain legislative intent accurately, which presents an impediment that is "troubling" in light of a latent ambiguity as is present in this case. Id. (*Palmer, J.*, concurring). Thus, under the interpretation regime of § 1-2z, when an ambiguity arises in application, so too does a fact intensive inquiry for the court. This case is illustrative of this potentially difficult point. Instead of looking to the legislative history for further guidance as to the application of the word "temporary" in this context, it appears that we are bound to apply the seemingly plain meaning of the word temporary to the facts in the record. See id., 140–41.

[4] As the majority notes, the defendant could have sought such evidence pursuant to Practice Book § 17-47. See footnote 13 of the majority opinion.